**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Great American Insurance Company,

Interpleader-Plaintiff,

- v. -

American International Group, Inc., Maurice R. Greenberg, Starr
International Company, Inc., C.V. Starr & Co., Inc., Edward E.
Matthews, Howard I. Smith, Bernard M. Aidinoff, Steven
Bensinger, Eli Broad, Vincent Cantwell, Michael J. Castelli, Pei-
Yuan Chia, Marshall A. Cohen, William S. Cohen, Robert
Crandall, William Dooley, Martin S. Feldstein, Ellen V. Futter,
Leslie L. Gonda, John Graf, Evan G. Greenberg, Carla A. Hills,
Frank J. Hoenemeyer, Richard C. Holbrooke, Robert P. Jacobson,
Donald P. Kanak, Christian M. Milton, Kristian T. Moor, Michael
L. Murphy, Win Neuger, Frank Petralito, Karen Radke, John J.
Roberts, Ernest E. Stempel, Martin J. Sullivan, Jean-Baptist
Tateossian, Thomas R. Tizzio, Edmund S.W. Tse, Joseph H.
Umansky, Jay S. Wintrob, Frank G. Wisner, and Frank G. Zarb,

Interpleader-Defendants.

------------------------------------------------------------------------------

American International Group, Inc.,

Cross Claimant,

- v. -

Starr International Company, Inc., C.V. Starr & Co., Inc., Maurice
R. Greenberg, Edward E. Matthews, and Howard I. Smith,

Cross Claim Defendants.

09-Civ-4476 (LTS)

---

**GREAT AMERICAN'S BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE
TO DEPOSIT FUNDS AND FOR AN INJUNCTION**

*Of Counsel:*
 James A. Skarzynski
 James T. Sandnes (JS-8944)
 Jennifer A. Dowd
 Aron M. Zimmerman

BOUNDAS, SKARZYNSKI, WALSH
 & BLACK, LLC
One Battery Park Plaza
New York, NY  10004
(212) 820-7700

*Attorneys for plaintiff*
 *GREAT AMERICAN INSURANCE COMPANY*

May 20, 2009

## Table of Contents

Table of Contents ................................................................................................i

Table of Authorities ........................................................................................ ii

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ................................................................................................4

A.    The Policy and Insured Entities or Insured Persons Thereunder ...................4

B.    The Underlying Litigations and Fees .................................................6

C.    The Greenberg Group's Demands Under the Policy ........................................8

D.    The Arbitration and AIG's Opposition .................................................9

E.    The Instant Application ........................................................................11

ARGUMENT ...................................................................................................13

I.    LEAVE TO DEPOSIT $15 MILLION SHOULD BE GRANTED ....................13

II.    THE DEFENDANTS SHOULD BE ENJOINED FROM INSTITUTING OR CONTINUING ANY PROCEEDINGS AFFECTING THE POLICY ................................................................14

III.    IN THE ALTERNATIVE, AN INJUNCITON, TO PRESERVE THE STATUS QUO *PENDENTE LITE*, SHOULD BE IN PLACE UNTIL THE COURT ISSUES DECLARATORY RELIEF SPECIFYING WHETHER AND HOW ANY ARBITRATION PROCEEDING SHOULD BE CONDUCTED ..........................................18

CONCLUSION ................................................................................................20

# Table of Authorities

## Cases

*Ashton v. Josephine Bay Paul and C. Michael Paul Found., Inc.*, 918 F.2d 1065
(2d Cir. 1990) ........................................................................................... 13

*Fidelity & Guar. Life Ins. Co. v. Harrod*, Civil No. CCB-05-2732, 2006 WL 1911077
(D. Md. May 25, 2006) ............................................................................... 17

*Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219
(2d Cir. 2001) ........................................................................................... 18

*In re Enron Corp. Securities, Derivative & "Erisa" Litigation v. Enron Corp.*,
No. MDL-1446, Civ.A. H-01-3624, 2004 WL 2889891 (S.D. Tex. Dec. 9, 2004) ...... 17

*Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund*,
982 F.2d 783 (2d Cir. 1992) ........................................................................ 13

*Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F.Supp.2d 481
(S.D.N.Y. 2001) ......................................................................................... 13

*Sotheby's, Inc. v. Garcia*, 802 F.Supp. 1058 (S.D.N.Y. 1992) .............................. 15, 16

*State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523 (1967) ......................... 13, 17

## Statutes

28 U.S.C. § 1335 ................................................................................... passim

28 U.S.C. § 2361 .......................................................................... 3, 12, 15, 18

Fed. R. Civ. P. 1 ........................................................................................ 20

Fed. R. Civ. P. 22 ........................................................................................ 3

Fed. R. Civ. P. 67 ........................................................................................ 3

## Treatises

7 Wright et al., Federal Practice and Procedure § 1714 (3d ed. 2001) ................... 17

7 Wright et al., Federal Practice and Procedure § 1716 (3d ed. 2001) ................... 14

## PRELIMINARY STATEMENT

American International Group, Inc. ("AIG") – once an insurance behemoth – purchased Directors', Officers', Insured Entity and Employment Practices Liability Insurance Policy Number DOL8811693 (the "Policy") from plaintiff Great American Insurance Company ("Great American").  The Policy covers Claims first made against Insured Persons and Insured Entities during the Policy Period of May 24, 2004 to May 24, 2005, subject to a $15 million Limit of Liability and a $10 million Retention, and subject to various other exclusions and limitations.[1]  The Policy insures not only AIG for costs it may pay to reimburse its present and former Directors, Officers and employees (the "D&Os") in the event they are sued for certain wrongdoing, but under certain specified circumstances, can provide so-called "A-side" coverage directly to the D&Os for un-reimbursed litigation costs.

In 2005, AIG and its long time Chairman Maurice R. Greenberg ("Greenberg") parted ways in a widely reported breakup.  Since that time, an adversarial relationship has blossomed between AIG on the one hand, and Greenberg along with a group of entities and people affiliated with him—defendants Starr International Company, Inc. ("SICO"), C.V. Starr & Co. ("C.V. Starr"), Edward E. Matthews ("Matthews") and Howard I. Smith ("Smith," and collectively the "Greenberg Group")—on the other hand.

---

[1] Capitalized terms used in this Memorandum have the same meaning that is ascribed to them in the Policy.  A copy of the Policy is attached to the Declaration of James Sandnes ("Sandnes Dec.") as Exhibit 1.

Unfortunately, Great American now finds itself in the middle of that fight.

Aside from any disputes between AIG and the Greenberg Group, there are multiple underlying lawsuits (the "Lawsuits") pending against them and a number of other D&Os (the "Additional Claimants," as more fully defined below).  The Lawsuits allege various causes of action, including securities fraud and breaches of fiduciary duty, and seek billions in damages.

The dispute presented by this case centers on a provision of the Policy that calls for Great American to "advance" the cost of defending possibly-covered litigations, subject to a right to recoup the amounts advanced if it is ultimately determined that there is no coverage for the Claim.  The Policy provides that such advancement will be made at the written request of the "Corporation," which is defined by the Policy as AIG.   No request for advancement has been made by AIG.

Nevertheless, the Greenberg Group has demanded that Great American advance its defense expenses and has instituted an arbitration (the "Arbitration") before the American Arbitration Association's International Center for Dispute Resolution ("ICDR") seeking such advancement.  However, as discussed below, AIG is designated by the Policy to act as agent for all of the Insureds, including the Greenberg Group, for all purposes.  Accordingly, the Greenberg Group does not have standing to invoke arbitration.  Moreover, the arbitration provision calls for the "Corporation" – again, defined as AIG – to name a party-appointed arbitrator, but the Greenberg Group has purported to exercise that right itself.

In the wake of the Greenberg Group's commencement of the Arbitration,

AIG wrote to Great American directing it not to make any advancement to the Greenberg Group and requesting that Great American "take all necessary steps … so that the rights of AIG and all Insureds under the Policy will not be prejudiced." Sandnes Dec. Ex. 8.  AIG also wrote to the Greenberg Group (copying Great American) objecting to the Greenberg Group's commencement of the Arbitration as invalid and inappropriate.  Sandnes Dec. Ex. 7.

Thus, as noted above, Great American finds itself in the middle of someone else's fight.  Great American believes it had no choice but to institute this action, in the nature of interpleader, pursuant to 28 U.S.C. § 1335 and Fed. R. Civ. P. 22, to adjudicate and resolve conflicting claims to the Policy proceeds and to determine its own liability, if any, with respect to the Policy.

In the alternative, the Complaint seeks declaratory relief as to whether Great American has an obligation to arbitrate against the Greenberg Group and, if so, whether AIG is a necessary and indispensable party to such an arbitration, and whether AIG or the Greenberg Group has the right to appoint the party-appointed arbitrator.

This motion seeks (1) authorization, pursuant to 28 U.S.C. § 1335(a)(2) and Fed. R. Civ. P. 67, to make the deposit with the Clerk of this Court required for an interpleader action, and (2) the issuance of a preliminary injunction, pursuant to 28 U.S.C. § 2361 and Fed. R. Civ. P. 65(a), restraining AIG, the Greenberg Group, and all other parties and persons having notice of the injunction from instituting or prosecuting or continuing to prosecute any proceeding in order to protect Great American — and the jurisdiction of this Court — from conflicting claims as to the Policy proceeds

3

pending adjudication of (i) the defendants' rights to such proceeds and/or (ii) the issuance of appropriate declaratory relief with respect to the Arbitration.

Great American does not seek a temporary restraining order at this time because the Greenberg Group has agreed to a stay of the Arbitration pending hearing and determination of this motion.  Great American, however, reserves the right to seek such a motion should the ICDR go forward with the Arbitration, despite the agreement of the parties, or should any other action or proceeding be brought against Great American.[2]

## BACKGROUND

**A.      The Policy and Insured Entities or Insured Persons Thereunder**

AIG, which is a holding company for many insurance companies is, at the same time, a publicly traded company.  Like most publicly-traded companies, AIG carries insurance to protect its directors and officers from certain liability that may arise from their employment with AIG.  AIG purchased the Great American Policy that is the subject of this action in 2004 as part of a very long-standing insurance relationship. Great American was AIG's primary D&O insurer continuously from the early-1990s until 2005.

As noted, the Policy covers Claims first made against Insured Persons and

_____

[2] Great American notes that it has not yet served the complaint in this action upon all of the Additional Claimants.  Accordingly, the injunctive relief sought binds AIG, the Greenberg Group, and all other parties and persons having notice thereof.

Insured Entities during the Policy Period of May 24, 2004 to May 24, 2005, subject to a

$15 million Limit of Liability and a $10 million Retention, and subject to various other

exclusions and limitations.   Important to the analysis of the rights of the parties, AIG is

the "Corporation" named on the Policy's Declarations page.  Sandnes Dec. Ex. 1(A).

 The Policy contains three clauses that bear on issues raised in this action.  The

General Terms and Conditions, Section IX.M., entitled "Corporation Represents

Insured," provides that:

> ***the Corporation [AIG] shall be designated to act on behalf of all of the
> Insureds for all purposes*** including, but not limited to, the giving and
> receiving of all notices and correspondence, the cancellation or non-
> renewal of this Policy, the payment of premiums, and the receipt of any
> return premium that may be due under this Policy.

Sandnes Dec. Ex. 1(A) at Section IX.M (emphasis added).  Section IX.I. of the Policy,

entitled "Arbitration," states that:

> [i]t is agreed that any disputes or disagreements which arise in connection
> with this Policy and cannot be resolved through negotiation shall be
> resolved through final and binding arbitration.  The dispute shall be
> submitted to the American Arbitration Association for resolution through
> its then prevailing commercial arbitration procedures.  ***The panel shall
> consist of one arbitrator selected by the Corporation [AIG], one
> arbitrator selected by the Insurer [Great American] and a third
> independent arbitrator selected by the first two arbitrators.***  Each party
> will bear its own legal fees and expenses.  The cost and expenses of the
> arbitration procedure shall be split equally by the parties.

*Id.* at Section IX.I (emphasis added).

 Endorsement 32 (the "Order of Payments" endorsement) requires that any

payment under the Policy be made "at the written request of the Corporation [AIG]."

*Id.* at Endorsement 32.

Based on these provisions, AIG has asserted that it alone has the authority to act on behalf of all of the Insureds, which includes the Greenberg Group, for all purposes under the Policy, and therefore only AIG, and not the Greenberg Group, has the right to commence an arbitration against Great American under the Policy. However, even if the Greenberg  Group does have the right to arbitrate against Great American, AIG has also asserted that the choice of arbitrators is squarely vested in AIG, not the Greenberg Group.

**B.    The Underlying Litigations and Fees**

AIG, the Greenberg Group, and/or the Additional Claimants are defendants in one or more lawsuits that AIG and/or the Greenberg Group noticed to Great American as Claims under the Policy (*i.e.,* the "Lawsuits").  The Lawsuits include:

In re AIG Derivative Litigation No. 1:04cv8406, filed in the U.S. District Court for the Southern District of New York;

Kleinhandler v. Greenberg et al., No. 05 CV 6417, filed in the U.S. District Court for the Southern District of New York;

Bassman v. AIG Derivative Litigation, 05CV7022, filed in the U.S. District Court for the Southern District of New York;

American International Group, Inc. Consolidated Derivative Litigation, No. CA769-VCS, filed in the Chancery Court for the State of Delaware;

Teachers' Retirement System of Louisiana and City of New Orleans Employees' Retirement System v. Vincent Cantwell et al., case no. 650064/2009, filed in the Supreme Court of the State of New York, County of New York;

In re American International Group, Inc. Securities Litigation, No. 1:04cv8141, filed in the U.S. District Court for the Southern District of New York;

Florida State Board of Administration v. AIG, M. Greenberg, M. Sullivan, H. Smith, M. Castelli, C. Milton, M. Murphy, K. Radke, J. Tateossian and D. Fields, No.

05CV7886, filed in the U.S. District Court for the Southern District of New York;

State of Oregon et al. v. American International Group, Inc., case no. 0802-03061, filed in the Circuit Court of the State of Oregon for the County of Multnomah, Oregon;

People v. AIG, Maurice Greenberg and Howard Smith, 401720/2005, filed in New York Supreme Court; and

In re Marsh& McLennan Companies Inc. Derivative Litigation, Civ. No., CA753-N, filed in the Chancery Court for the State of Delaware.

Sandnes Dec. ¶ 10.

Each member of the Greenberg Group is an "Insured Entity" or "Insured Person" under the Policy.  Great American has been advised by AIG that AIG initially advanced the attorney's fees and expenses incurred by the Greenberg Group in defending the Lawsuits.  To the best of Great American's information and belief, AIG terminated that advancement in mid-2007 when AIG took over the prosecution of one or more of the Lawsuits against certain members of the Greenberg Group.  *See* AIG's Answer and Cross Claim at Cross Claims ¶¶ 13-17.

Great American is informed and believes that SICO and/or C.V. Starr have been advancing the attorney's fees and costs incurred by Greenberg, Smith and Matthews in connection with the Lawsuits since AIG stopped advancing in mid-2007. *See* AIG's Answer and Cross Claim at Cross Claims ¶ 17.  Great American understands that such costs alone probably well exceed the $15 million Limit of Liability of the Great American Policy.  *See id.* ¶ 15.

However, AIG has also advised Great American that it has paid tens of millions of dollars in attorney's fees and expenses on behalf of the Greenberg Group, on

behalf of the Additional Claimants, and on its own behalf in connection with the

Lawsuits.  According to AIG, the attorney's fees and costs advanced by AIG on behalf

of the Additional Claimants also exceed the Policy's $10 million Retention and $15

million Limit of Liability.  *See id.* ¶ 16.[3]

## C.   The Greenberg Group's Demands Under the Policy

On January 27, 2009, the Greenberg Group wrote to Great American

demanding reimbursement and advancement of Costs of Defense under the Policy in

the full amount of the $15 million Policy limit.  Sandnes Dec. Ex. 2.

On February 10, 2009, Great American responded by letter, advising the

Greenberg Group that AIG had competing claims to the Policy and if Great American

made any payment to the Greenberg Group, Great American could potentially face a

---

[3] Each of the Additional Claimants is or was a party to one or more of the underlying Lawsuits.  However, Great American has learned that Ernest E. Stempel is now deceased.  Accordingly,  Great American moves to amend the caption to substitute the "Estate of Ernest E. Stempel" in place and stead of "Ernest E. Stempel" pursuant to Fed. R. Civ. P. 25(a).  Sandnes Dec. ¶ 11.   Great American has also learned that the complaint inadvertently named "Michael L. Murphy" as a defendant.  This was a misnomer.  The person who should have been named is "L. Michael Murphy."  Great American therefore also moves to amend the caption to substitute "L. Michael Murphy" in place and stead of "Michael L. Murphy."  Sandnes Dec. ¶ 12.

The other Additional Claimants are: Bernard M. Aidinoff, Steven Bensinger, Eli Broad, Vincent Cantwell, Michael J. Castelli, Pei-Yuan Chia, Marshall A. Cohen, William S. Cohen, Robert Crandall, William Dooley, Martin S. Feldstein, Ellen V. Futter, Leslie L. Gonda, John Graf, Evan G. Greenberg, Carla A. Hills, Frank J. Hoenemeyer, Richard C. Holbrooke, Robert P. Jacobson, Donald P. Kanak, Christian M. Milton, Kristian T. Moor, Michael L. Murphy, Win Neuger, Frank Petralito, Karen Radke, John J. Roberts, Martin J. Sullivan, Jean-Baptiste Tateossian, Thomas R. Tizzio, Edmund S.W. Tse, Joseph H. Umansky, Jay S. Wintrob, Frank G. Wisner, and Frank G. Zarb.

claim by AIG for improper erosion of the Policy limits.  Sandnes Dec. Ex. 3.

On February 23, 2009, the Greenberg Group again wrote to Great American reiterating its demand for the Policy limit as advancement of Costs of Defense.   Sandnes Dec. Ex. 4.

On March 9, 2009, Great American responded to the Greenberg Group that it could not make any advancement under the Policy without AIG's written request pursuant to Endorsement 32 of the Policy (the "Order of Payments" endorsement), which requires that any payment under the Policy be made "at the written request of the Corporation [AIG]." Sandnes Dec. Ex. 5.

**D.      The Arbitration and AIG's Opposition**

On March 31, 2009, the Greenberg Group filed a Demand for Arbitration and Statement of Claims ("Arbitration Demand") with the ICDR, Case: 50 195 T 00151 09 (*i.e.*, the "Arbitration"), naming Great American as respondent and seeking an order directing Great American to advance Costs of Defense to the Greenberg Group in the amount of the full limit of the Policy.  Sandnes Dec. Ex. 6.

In its Arbitration Demand, the Greenberg Group collectively nominated Donald T. DeCarlo as a party-appointed arbitrator.

AIG is not a party to the Arbitration.  *Id.*  Nevertheless, by letter dated April 27, 2009 to the Greenberg Group and copied to Great American, AIG demanded that the Greenberg Group withdraw its Arbitration Demand because, AIG asserts, only AIG has the right to commence an arbitration and appoint an arbitrator under the Policy.  Sandnes Dec. Ex. 7.  AIG points out that the Arbitration provision of the Policy,

quoted in full above, states that the panel shall consist of "one arbitrator selected by the Corporation [AIG], one arbitrator selected by the Insurer [Great American] and a third independent arbitrator selected by the first two arbitrators."  Sandnes Dec.  Ex. 1 at Section IX.I.

Moreover, Section IX.M. of the Policy titled "Corporation Represents Insureds" – also quoted in full above – provides that "the Corporation [AIG] shall be designated to act on behalf of all of the Insureds for all purposes. . . ."  Sandnes Dec. Ex. 1(A) at Section IX.M.

By separate letter dated April 27, 2009, AIG directed Great American not to make any payment under the Policy to the Greenberg Group and requested that Great American "take all necessary steps … so that the rights of AIG and all Insureds under the Policy will not be prejudiced."  Sandnes Dec. Ex. 8.

In response to the Arbitration and AIG's letter, Great American initiated this action on May 8, 2009.  Since the complaint was filed, AIG has filed an answer and cross claim against the Greenberg Group.  AIG's cross claim alleges that the Greenberg Group is not entitled to advancement, and that if anyone is entitled to advancement it is AIG, because AIG paid tens of millions of dollars in attorney's fees and expenses on behalf of the Greenberg Group and on behalf of the Additional Claimants in connection with the Lawsuits before the Greenberg Group incurred any costs.  AIG's cross claim seeks a declaration of AIG's rights under the Policy, and a declaration that the Greenberg Group is not entitled to invoke the arbitration provision and/or name an arbitrator on the Greenberg Group's behalf.

E.      **The Instant Application**

Great American is the stakeholder of the Policy proceeds and faces conflicting, adverse claims with respect to the Policy, thereby exposing Great American to multiple litigation and liability absent resolution of all such claims in one proceeding. Great American has available to it and is prepared to deposit into the Registry of the Court its full $15 million Policy limit, which is the most that Great American could be liable to pay to all defendants, pending the Court's determination of the defendants' entitlement thereto.

Great American is not, however, seeking to be discharged from this suit because, *inter alia*, pursuant to Endorsement 21 to the Policy ("Costs of Defense and Settlement"), Great American has a right to recoup all amounts advanced under the Policy in the event it is finally established that Great American has no liability under the Policy for those amounts.  Sandnes Dec. Ex. 1(A) at Endorsement 21.  There may also be issues with respect to whether attorney's fees and expenses incurred in connection with the Lawsuits are "reasonable and necessary" as required by Section III.D of the Policy. *See id.* at Section III.D.[4]  However, based on the limited information available to Great American at this time, it appears that the Costs of Defense currently exceed the

_____

[4] As noted above, the Policy only covers Costs of Defense, which are limited to "reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal or any [covered] Claim."  Sandnes Dec. Ex. 1(A) at Section III.D. Neither AIG nor the Greenberg Group has ever submitted any attorney's fees, costs, or expense invoices to Great American.

Retention and Policy limits, even if reduced due to the elimination of unreasonable and/or unnecessary amounts.

In light of the foregoing, Great American has a manifest need for the Court's guidance and protection.   Great American seeks, by this motion, to interplead the defendants pursuant to 28 U.S.C. § 1335, so that the Court may determine the claimants' competing claims.  In addition, Great American seeks an order pursuant to 28 U.S.C. § 2361, permanently restraining and enjoining AIG, the Greenberg Group, and all other parties and persons having notice of the injunction, and their agents, attorneys, servants, and employees, and all persons in active concert or participation with any of them, from instituting or prosecuting or continuing to prosecute any proceeding in any State or United States court or in any arbitration proceeding, including the Arbitration, affecting the Policy or the proceeds thereof, pending the outcome of the instant action.

Finally, in the event the Court declines to stay the Arbitration pending the outcome of the instant action, Great American seeks  a declaratory judgment from the Court specifying how to proceed with the Arbitration, including:

a.      Declaring whether the Greenberg Group has a right to commence arbitration under the Policy;

b.      Declaring that AIG is a necessary party to the Arbitration and directing that AIG must be joined to the Arbitration as a party;

c.      Declaring whether the Greenberg Group has a right to appoint an arbitrator;

d.      Declaring, in the event that the Greenberg Group does not have a

12

right to appoint an arbitrator, the proper method for proceeding with the arbitrator

selection process; and

      e.      Directing how the $15 million Policy proceeds are to be held

pending the outcome of the Arbitration.

## ARGUMENT

## I.      LEAVE TO DEPOSIT $15 MILLION SHOULD BE GRANTED

      Under 28 U.S.C. § 1335(a), district courts have original jurisdiction over

any civil actions where there are adverse claims to money or property worth $500 or

more, as long as two or more claimants are of diverse citizenship and "are claiming or

may claim to be entitled to such money or property."  The goal of statutory interpleader

actions is "to avoid the problem of multiple, conflicting claims to a single fund by

forcing all 'claimants' to resolve their claims in one action."  *Rubinbaum LLP v. Related

Corporate Partners V, L.P.*, 154 F.Supp.2d 481, 486 (S.D.N.Y. 2001) (Koeltl, J.) (citing *State

Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533 (1967)).  *See also Ashton v. Josephine

Bay Paul and C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1068 (2d Cir. 1990).  The U.S.

Supreme Court has made clear that § 1335 "is remedial and to be liberally construed."

*Tashire*, 386 U.S. at 533.

      Pursuant to 28 U.S.C. § 1335(a)(2), an interpleader plaintiff must deposit

the disputed money or property into the Registry of the Court or, if that is not possible,

deposit an amount equal to the highest potential claim made the subject matter of the

interpleader.  *Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities

Fund*, 982 F.2d 783, 787 (2d Cir. 1992).  The interpleader plaintiff may, as an alternative,

give a "bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy." 28 U.S.C. § 1335(a)(2).  Deposit of the disputed property, or a bond in its place, guarantees that the Court can effect an equitable and efficient apportionment.  *See* 7 Wright et al., *Federal Practice and Procedure* § 1716 (3d ed. 2001).

Without waiving any right to recoup all amounts advanced under the Policy in the event it is finally established that Great American has no liability under the Policy for the amounts advanced, Great American seeks leave to deposit, into the Registry of the Court, its full $15 million Policy Limit of Liability, which is the most that Great American could be liable to pay to all defendants combined, pending the Court's determination of the defendants' entitlement thereto.  Great American stands ready to deposit the funds and seeks leave of this Court to do so promptly.

Justice and equity demand that Great American should not be compelled to become involved in the dispute among the defendants for an appropriate allocation of the Policy proceeds, and this Court is in the best position to determine any and all rights and duties Great American may have under the Policy.

## II.     THE DEFENDANTS SHOULD BE ENJOINED FROM INSTITUTING OR CONTINUING ANY PROCEEDINGS AFFECTING THE POLICY

Great American seeks a preliminary injunction barring the defendants from instituting or prosecuting or continuing to prosecute any proceeding in any State or United States court or in any arbitration proceeding affecting the Policy or the

proceeds thereof.  There is no doubt of the authority of this Court to grant such relief.

28 U.S.C. § 2361 provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.

Under § 2361, a party meeting the jurisdictional requirements of 28 U.S.C. § 1335 may be granted a restraining order without following the procedures laid out in Federal Rule of Civil Procedure 65, which normally governs injunctive relief.  *See* Fed. R. Civ. P. 65(e) ("These rules do not modify . . . 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader."); *Sotheby's, Inc. v. Garcia*, 802 F.Supp. 1058, 1066 (S.D.N.Y. 1992) (Conner, J.).  Thus, the Court may issue an interpleader injunction over any proceeding that "affect[s] the property, instrument or obligation involved in the interpleader action," without engaging in a balance-of-harm analysis.  28 U.S.C. § 2361.

Not only is the power of the Court to grant the requested relief clear, so too is the need for the relief.  On the one hand, Great American fears that if it advances costs of defense to the Greenberg Group under the Policy, it will incur liability to AIG, which has instructed Great American to hold the Policy proceeds for future use.   As noted above, Great American has been advised that AIG has already incurred Costs of Defense well in excess of the Policy's $10 million Retention and $15 million Limit of Liability.  *See* AIG's Answer and Cross Claim at Cross Claims ¶ 16.  On the other hand,

if Great American does not advance Costs of Defense to the Greenberg Group under the Policy, it could incur liability to the Greenberg Group in the Arbitration.  It is important to reiterate that AIG is not a party to that Arbitration and will not be bound by its outcome.

This is the classic claims conflict that interpleader exists to remedy.  *See, e.g., Sotheby's,* 802 F.Supp. at 1065 ("The mere threat of future litigation is a sufficient basis for interpleader.") (quotation omitted).  The Arbitration, as currently constituted, involves only the stakeholder (Great American) and one group of claimants (the Greenberg Group).  The adverse claimants, AIG and the Additional Claimants, are not parties to the Arbitration.  As such, it is entirely appropriate to use interpleader to prevent these conflicting claims.  *See Garcia*, 802 F.Supp. at 1066 (granting injunction in favor of interpleader action naming all claimants to disputed paintings over previously filed suit naming only one claimant, because the first action would not be an adequate remedy).

Failure to resolve this problem at the outset of an interpleader action can defeat the very purpose of such a proceeding.  The Supreme Court has held that the purpose of statutory interpleader actions is to confine litigation over a *res* to one forum and proceeding:

> where a stakeholder, faced with rival claims to the fund itself, acknowledges--or denies--his liability to one or the other of the claimants.  .  .  .  In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy.  It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation.

16

*Tashire*, 386 U.S. at 534.

With that in mind, § 2361 grants federal courts broad statutory powers to issue restraints against the parties engaging in litigation that would undermine the interpleader process.  In this way, interpleader saves court resources by condensing numerous potential individual actions into a single all-inclusive unit.   *See* 7 Wright et al., *Federal Practice and Procedure* § 1714 (3d ed. 2001).

It does not matter that one of the underlying cases sought to be enjoined is in an arbitration forum, not a court.  The district court's power to restrain the parties to avoid undermining the interpleader process has been held to apply to arbitration proceedings as well.  *See, e.g., Fidelity & Guar. Life Ins. Co. v. Harrod*, Civil No. CCB-05-2732, 2006 WL 1911077, at *2 (D. Md. May 25, 2006) (denying motion to dismiss interpleader and "enjoining each and all of the defendants from instituting any further proceedings in any state or federal court or proceeding with any arbitration or mediation against [stakeholder] F & G Life, including the arbitration that was already pending in Texas") (Attached Appendix of Unpublished Cases ("Apx.") A); *In re Enron Corp. Securities, Derivative & "Erisa" Litigation v. Enron Corp.*, No. MDL-1446, Civ.A. H-01-3624, 2004 WL 2889891, at *2 (S.D. Tex. Dec. 9, 2004) (finding subject matter jurisdiction over excess insurers' action under interpleader statute because "[n]either the policies' arbitration clauses nor the forum selection clause would deprive this Court of subject matter jurisdiction to control the proceeds of the D & O Insurance while it determines which of the various claimants is entitled to receive them," and granting

preliminary injunction under 28 U.S.C. § 2361 over "any actions or arbitration proceedings") (Apx. B).

Thus, the very risks that statutory interpleader is designed to address are imminent. For this reason, Great American seeks a preliminary injunction precluding the commencement or continuation of any litigation action, including the Arbitration.

**III.  IN THE ALTERNATIVE, AN INJUNCITON, TO PRESERVE THE STATUS QUO *PENDENTE LITE*, SHOULD BE IN PLACE UNTIL THE COURT ISSUES DECLARATORY RELIEF SPECIFYING WHETHER AND HOW ANY ARBITRATION PROCEEDING SHOULD BE CONDUCTED**

In the event that Great American's request for interpleader and an interpleader injunction is denied at this point, in the alternative Great American's complaint seeks declaratory relief regarding its obligations to arbitrate. Such relief is clearly warranted. As discussed above, given the Policy language, there is a very real dispute regarding whether the Greenberg Group has the right to institute the Arbitration and, even if it does, whether by the Greenberg Group has a right to appoint an arbitrator.

While the Federal Arbitration Act states a strong public policy in favor of arbitration, arbitration is merely a creature of contract and, in the absence of a contractual obligation to arbitrate, no party to the contract can be compelled to arbitrate. *See Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) ("It is clear that federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope . . . the FAA does not require parties to arbitrate when they have not agreed to do so.") (internal quotations

omitted).  Here the dispute not only goes to whether the arbitration clause in the Policy has been properly invoked, but to whether a panel can even be formed to interpret the scope of the clause.  Thus, these threshold issues should be resolved by this Court.

Moreover, while Great American is prepared to arbitrate, if directed to do so by the Court, it is absurd for the arbitration to proceed in the absence of AIG, given that Great American's defense to the Greenberg Group's arbitration claims is primarily that AIG, as agent for all of the Insureds, directed Great American pursuant to the terms of the Policy not to make any payment to the Greenberg Group.

The plain fact is that Great American is being used as a pawn in the battle between AIG and Greenberg.  The Greenberg Group could have chosen to assert its right to payment of defense costs, as indemnification, directly against AIG and sought preliminary injunctive relief as appropriate.  But instead of going directly at AIG, the Greenberg Group is attempting get the money out a side door.  AIG, in turn, is insisting that Great American do whatever it can to bar that door.  Thus, both sides are unfairly causing Great American to expend resources.

Although the legal issues related the arbitration clause may take some time to sort out, this Court should use its declaratory powers to specify whether the arbitration clause has been properly invoked and, if so, which party (AIG or the Greenberg Group) is entitled to select a party-appointed arbitrator.  Pending litigation of those issues, an injunction staying the Arbitration should be granted.  Without such an injunction, the Arbitration will go forward and the ability of the Court ultimately to grant useful relief might be thwarted.  Great American will waste more money and the

arbitrators will waste their time.   Regardless of the ultimate interpretation given to the

arbitration clause, Great American is likely to succeed on its claim requesting a

declaration interpreting the arbitration clause one way or the other, thereby affecting

the arbitration proceeding as a whole.  Accordingly, a preliminary injunction is

appropriate.  *See* Fed. R. Civ. P. 1 and 65.

**CONCLUSION**

For the foregoing reasons, Great American respectfully requests that the

Court: (1) enter an order granting leave, pursuant to Rule 67 of the Federal Rules of

Civil Procedure, to make the requisite deposit under 28 U.S.C. § 1335(a)(2); and (2) enter

a preliminary injunction prohibiting AIG, the Greenberg Group, and all other parties

and persons having notice of the injunction, and their agents, attorneys, servants, and

employees and all persons in active concert or participation with any of them, from

instituting or prosecuting or continuing to prosecute any proceeding in any State or

United States court or in any arbitration proceeding, including the Arbitration, affecting

the Policy or the proceeds thereof.

Dated:  New York, New York  
           May 20, 2009  

*Of Counsel:*  

   James A. Skarzynski  
   Jennifer A. Dowd  
   Aron M. Zimmerman  

BOUNDAS, SKARZYNSKI,  
   WALSH & BLACK, LLC  


By: s/ James T. Sandnes  
     James T. Sandnes (JS-8944)  
One Battery Park Plaza  
New York, New York  10004  
(212) 820-7700  

*Attorneys for plaintiff*  
 *GREAT AMERICAN INSURANCE COMPANY*